**07-4005-cr**
**USA v. Marcus**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

―――――――――――

August Term, 2010

(Argued: October 13, 2010          Decided: December 7, 2010)

Docket No. 07-4005-cr

―――――――――――

UNITED STATES OF AMERICA,

*Appellee*,

–v.–

GLENN MARCUS

*Defendant-Appellant.*

―――――――――――

Before:
          CALABRESI, STRAUB, WESLEY, *Circuit Judges*.

     Appeal from a judgment of the United States District Court for the Eastern District of New York (Ross, *J.*), entered on September 18, 2007, convicting defendant of violating the sex trafficking and forced labor provisions of the Trafficking Victims Protection Act.

     AFFIRMED in part, VACATED in part, and REMANDED.

―――――――――――

          HERALD PRICE FAHRINGER (Erica T. Dubno, *on the brief*),

Fahringer & Dubno, New York, NY, *for Defendant-Appellant*.

PAMELA CHEN, Assistant United States Attorney, *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn NY, *for Appellee*. (Peter A. Norling, Assistant United States Attorney, Benton J. Campbell, United States Attorney, Eastern District of New York, Brooklyn, NY; Grace Chung Becker, Acting Assistant Attorney General, Jessica Dunsay Silver, Tovah R. Calderon, Attorneys, Department of Justice, Civil Rights Division, Appellate Section, *on the brief in the original appeal*).

WESLEY, *Circuit Judge*:

Defendant-Appellant was convicted following a jury trial on charges of violating the forced labor and sex trafficking provisions of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1589, 1591. In an opinion dated August 14, 2008, this Court vacated the judgment and remanded the case on the ground that, under plain error review, Marcus's convictions violated the Ex Post Facto Clause. *United States v. Marcus*, 538 F.3d 97 (2d Cir. 2008) (per curiam).

The Supreme Court reversed and remanded. Noting that Marcus's contention implicated the Due Process Clause,[1] the

---

[1] Marcus's claim is properly labeled a due process claim because the potential retroactive application of the

Supreme Court held that this Court's standard for plain error review, as applied to Marcus's claim, was inconsistent with the Supreme Court's extant precedent. *United States v. Marcus*, 130 S. Ct. 2159, 2163 (2010). On remand, we must address Marcus's due process challenge to his sex trafficking and forced labor convictions under the appropriate plain error standard. For the reasons set forth below, we affirm Marcus's forced labor conviction and vacate his sex trafficking conviction. The case is remanded to the district court for proceedings consistent with this opinion.

## I. BACKGROUND

The facts of this case are set forth in the district court's opinion, *United States v. Marcus*, 487 F. Supp. 2d 289, 292–97 (E.D.N.Y. 2007), and summarized in this Court's prior opinion, *Marcus,* 538 F.3d at 98–100. Because familiarity with those opinions is presumed, we recite only the facts and procedural history relevant to the issues on remand.

From October 1998 through approximately June 1999,

---

TVPA to Marcus's conduct was the result of an erroneous jury instruction rather than an act of Congress. *See United States v. Marcus*, 130 S. Ct. 2159, 2165 (2010).

Marcus and the complaining witness, Jodi,[2] engaged in a consensual relationship that involved bondage, dominance/discipline, submission/sadism, and masochism ("BDSM"). After they met on the internet, Marcus convinced Jodi to move from her home in the Midwest to Maryland, where she lived in the apartment of a woman named Joanna. Jodi, Joanna, and other women participated in various BDSM activities with Marcus. This included being considered Marcus's "slaves" and being subjected to various physical and sexual "punishments." At Marcus's direction, Joanna maintained a membership BDSM website called "Subspace," which contained pictures of Jodi and other women participating in BDSM activities and fantasy diary entries written about these activities.

By October 1999, the nature of this arrangement changed. Because Jodi refused to recruit her younger sister to become one of Marcus's "slaves," Marcus inflicted upon Jodi a "punishment" that was the most physically severe that she had experienced to date. Jodi testified that she cried

[2] At trial, the district court granted the Government's motion to allow certain witnesses to testify using their first names only. *Marcus*, 487 F. Supp. 2d at 292 n.2.

throughout the incident and that thereafter her relationship with Marcus became nonconsensual. According to Jodi, she began to feel "trapped" and "full of terror."

In January 2000, Marcus instructed Jodi to move to New York, where she lived with Rona, another one of Marcus's "slaves." Jodi testified that upon her move to New York, Marcus directed her to create and maintain a new commercial BDSM website called "Slavespace." Jodi indicated that she worked on the site for approximately eight to nine hours per day, updating photographs and diary entries and clicking on banner advertisements to increase revenue and enhance the site's visibility on the internet. She testified that she continued to work on the website in this manner after she obtained a full-time job in November 2000. Marcus received all revenues from the website, consisting primarily of membership fees and advertising.

Although Jodi did not want to work on the website as Marcus instructed, she did so because she feared the consequences of her refusal. Marcus created and fueled Jodi's fear by physically and sexually "punishing" her when he was unhappy with her work on the website. Punishment

would occur when Jodi did not post pictures or diary entries quickly enough or when the website was not making as much money as Marcus expected. These punishments were photographed, and the pictures were posted on Slavespace. Additionally, Marcus required Jodi to write diary entries about these punishments, which, at his direction, indicated her satisfaction in receiving them.

One of the most severe punishments Marcus imposed on Jodi occurred in Rona's apartment in April 2001. Marcus tied Jodi's hands together with rope, made Jodi lie down on a coffee table, and told Jodi he was going to put a safety pin through her labia. Because she began to scream and cry, Marcus put a washcloth in Jodi's mouth and whipped her with a kitchen knife in an unsuccessful attempt to force her to stop crying. Marcus proceeded to put the safety pin through Jodi's labia and attached a padlock to it, closing her vagina. Marcus photographed this incident, and the pictures were posted on the Slavespace website. He also directed Jodi to write a diary entry about this incident for the website.

Although Jodi's relationship with Marcus had become nonconsensual, she remained with Marcus out of fear of his

reaction if she left.  Specifically, at one point, when Jodi told Marcus that she was unhappy and could not continue with the arrangement, Marcus threatened to send pictures of Jodi to her family and the media.

In March 2001, Jodi told Marcus that she wanted to leave.  In response, Marcus told Jodi that she had to endure one final punishment.  In the basement of a Long Island residence, Marcus inflicted a severe punishment on Jodi, including banging her head against a basement ceiling beam, tying her hands and ankles to the beam, beating her and whipping her while she was hanging from the beam, drugging her with Valium, and inserting a large surgical needle through her tongue.  After inflicting this beating, Marcus let Jodi off the beam, took her to a bedroom, and had sexual intercourse with her.  Marcus photographed Jodi throughout the punishment and instructed her to write and post on the website a diary entry about the incident.

Jodi testified that, after this incident, she felt broken, surrounded by fear and terror, and trapped in this relationship with Marcus.  She continued to live in Rona's apartment until August 2001, at which point Rona told Marcus that she no longer wanted Jodi to live with her.  Jodi then

moved into her own apartment, and her interactions with Marcus became less frequent and less extreme, although she remained in contact with him until 2003.

On February 9, 2007, the Government obtained a superseding indictment charging Marcus with violating the sex trafficking statute, 18 U.S.C. § 1591(a)(1), and the forced labor statute, 18 U.S.C. § 1589, of the TVPA "[i]n or about and between January 1999 and October 2001." After a jury trial, Marcus was convicted on both counts.[3]

Although the TVPA was not enacted until October 28, 2000, the Government presented evidence with respect to the entire period charged in the superseding indictment, and the district court did not instruct the jury with respect to the TVPA's enactment date. At trial, Marcus did not object to the jury instructions on this ground, nor did he raise the argument in his motion for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. Marcus's post-conviction motions for judgment of acquittal, Fed. R. Crim. P. 29, and for a new trial, Fed. R. Crim. P.

---

[3] The indictment also charged Marcus with obscenity in violation of 18 U.S.C. § 1462, but the jury acquitted him of that count.

33, were denied by the district court.  *See Marcus*, 487 F. Supp. 2d at 313.

Marcus brought a timely appeal in which he argued, in relevant part, that the TVPA was applied retroactively in his case in violation of the Ex Post Facto Clause of the United States Constitution.  Because Marcus failed to raise this argument before the district court, we reviewed for plain error only.

We vacated Marcus's convictions, holding that under *United States v. Torres*, 901 F.2d 205 (2d Cir. 1990), on plain error review, an error implicating the Ex Post Facto Clause requires a new trial if, as was the case here, "there is any possibility, no matter how unlikely" that an uninstructed jury could have convicted the defendant based exclusively on pre-enactment conduct.  *Marcus*, 538 F.3d at 102.

Though joining in the judgment because our then precedent compelled the result, two members of the panel noted that the standard in *Torres* was inconsistent with Supreme Court precedent.  *Id.* at 102-03 (Sotomayor, *J.,* concurring).  Looking to *United States v. Cotton*, 535 U.S.

625 (2002), and *Johnson v. United States*, 520 U.S. 461 (1997), the concurrence concluded that "where there is no reasonable possibility than an error not objected to at trial had an effect on the judgment, the Supreme Court counsels us against exercising our discretion to notice that error." *Marcus*, 538 F.3d at 104. Applying this principle to the context of an *ex post facto* violation under a plain error standard of review, the concurrence reasoned:

> [W]here the evidence is "overwhelming" or "essentially uncontroverted" that the defendant's relevant pre- and post-enactment conduct is materially indistinguishable, such that a reasonable jury would not have convicted the defendant based solely on pre-enactment conduct, a retrial is unwarranted. In other words, the defendant must meet the low threshold of offering a plausible explanation as to how relevant pre- and post-enactment conduct differed, thereby demonstrating a reasonable possibility that the jury might have convicted him or her based exclusively on pre-enactment conduct. When this requirement is not met, the error does not seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

*Id.*

The concurrence concluded that Marcus's sex trafficking conviction should be vacated, but his forced labor conviction affirmed, because with respect to the forced

labor charge, Marcus offered "no plausible argument as to why the jury would have differentiated between his conduct before and after the enactment of the statute." *Id.* at 106.

The Supreme Court reversed and remanded, holding that the "any possibility, however remote" standard was inconsistent with its plain error review precedents. *Marcus*, 130 S. Ct. at 2164. On remand, we must decide whether the error in this case affected Marcus's substantial rights and the fairness, integrity or public reputation of his judicial proceeding.

## II. DISCUSSION

Federal Rule of Criminal Procedure 52(b) permits an appellate court to recognize a "plain error that affects substantial rights," even if the claim of error was not brought to the district court's attention. *Marcus*, 130 S. Ct. at 2164. We will exercise our discretion to correct an error not raised at trial only where an appellant demonstrates that: (1) there is an error; (2) the error is plain, that is, the error is "clear or obvious, rather than subject to reasonable dispute;" (3) the error "affected the appellant's substantial rights, which in the ordinary case means" it "affected the outcome of the district court

proceedings;" and (4) "the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (brackets in original). Here, only the third and fourth requirements are in dispute.

To satisfy the third requirement, an appellant must demonstrate that the error was prejudicial. In the ordinary case, an error is prejudicial where there is a "reasonable probability that the error affected the outcome of the trial." *Id.* Regarding the fourth requirement, "in most circumstances, an error that does not affect the jury's verdict does not significantly impugn the fairness, integrity, or public reputation of the judicial process." *Id.* at 2166 (internal quotation marks omitted). Therefore, to have impacted Marcus's substantial rights and the fairness, integrity or public reputation of the judicial proceedings, the overall effect of the due process error must have been sufficiently great such that there is a reasonable probability that the jury would not have convicted him absent the error.

Here, there is no reasonable probability that the jury would have acquitted Marcus absent the error. First, the Government presented post-enactment evidence sufficient to

satisfy the elements of the forced labor statute.[4]  From January 2000 until at least the spring of 2001, Marcus forced Jodi, through the persistent threat of serious physical harm and actual physical harm, to create and maintain a commercial BDSM website from which only Marcus derived pecuniary gain.  Jodi testified that she worked on Marcus's website for eight to nine hours a day including while she had a full time job.[5]  During this time period,

---

[4] 18 U.S.C. § 1589 provided, in relevant part:  "Whoever knowingly provides or obtains the labor or services of a person . . . by threats of serious harm to, or physical restraint against, that person or another person; . . . by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; or  . . . by means of the abuse or threatened abuse of law or the legal process, shall be [punished]."  18 U.S.C. § 1589 (2000).  We note that the language of 18 U.S.C. § 1589 was amended in 2008.  We apply the version of the statute in effect at the time of Marcus's conduct.

[5]  Marcus argues that the fact that Jodi acquired a full time job in November 2000 undermines the credibility of her testimony that she worked on the website eight to nine hours a day post-enactment.  He also points out that Rona testified that Jodi did not work on the website after she acquired the full time job.  These arguments, however, do not compel the conclusion that the jury believed that Jodi provided website related services to Marcus pre-enactment rather than post-enactment.  First, it is not impossible for Jodi to have worked an eight-hour day, commuted from Queens, NY, and still worked eight hours on the website.  Second, it is undisputed that Jodi was required, under threat of

Jodi was motivated to work on the website out of fear of future physical and sexual abuse from Marcus. One of the most severe punishments, the April 2001 coffee table incident, occurred post-enactment. Jodi testified that this punishment was due to her unsatisfactory work on the website. Based on this evidence, a jury could find that Marcus obtained Jodi's labor through threat of serious physical harm and actual physical harm after October 2000.[6]

Second, we find no reasoned basis to differentiate between Marcus's pre- and post-enactment conduct, and we find no reason to presume that the jury did so. Although the Government presented evidence that Jodi wrote diary entries about her BDSM activities for Marcus's old BDSM website dating back to 1999, the substantial evidence of forced labor begins in January 2000, when Marcus directed Jodi to move from Maryland to New York and instructed her to create and manage his new commercial BDSM website. From January 2000, continuing through the effective date of the

punishment, to write diary entries for Slavespace expressing her enjoyment of the March and April 2001 punishments.

[6] This conclusion likewise disposes of Marcus's argument that the evidence of his post-enactment conduct is insufficient to sustain the forced labor conviction.

TVPA in October 2000, and into April 2001, Marcus's conduct supporting the forced labor conviction is essentially the same. If anything, Marcus's use of force against Jodi *increased* post-enactment, with two of the most severely violent incidents occurring in March and April of 2001. Marcus offers no explanation for how his pre-enactment conduct differed from his post-enactment conduct in a manner that would lead us to conclude that there is a reasonable probability that the jury would not have convicted him absent the due process error.[7]

---

[7] On appeal, the parties originally disputed whether forced labor and sex trafficking constituted continuing offenses. "A conviction for a continuing offense straddling enactment of a statute will not run afoul of the Ex Post Facto clause unless it was possible for the jury . . . to convict *exclusively* on pre-enactment conduct." *United States v. Monaco*, 194 F.3d 381, 386 (2d Cir. 1999) (internal quotation marks omitted). Prior to the Supreme Court's opinion in this case, under *Torres*, the same analysis applied under plain error review. *See Torres*, 901 F.2d at 229. In our prior opinion, we did not decide whether violations of the forced labor and sex trafficking statutes constitute continuing offenses because, in any event, it was possible that Marcus had been convicted solely on the basis of pre-enactment conduct and thus a new trial was necessary. *Marcus*, 538 F.3d at 101. Although we now affirm Marcus's forced labor conviction, we again have no need to decide whether forced labor constitutes a continuing offense. Even assuming it does not, a new trial is not warranted because neither the third nor fourth requirements of the plain error standard are satisfied.

For substantially similar reasons, we reject Marcus's additional argument that he was prejudiced, not because of the potential retroactive application of the TVPA to his pre-enactment conduct, but because the proceedings were "swamped by highly prejudicial evidence – spanning 22 months – that, although charged as criminal, violated no law at the time."  The Government presented substantial evidence of Marcus's post-enactment conduct, and nothing about the nature or quantity of the evidence of Marcus's pre-enactment conduct leads us to conclude that it is reasonably probable that the jury would have acquitted Marcus but for the evidence of Marcus's pre-enactment conduct.

Therefore, because the erroneous jury instruction neither prejudiced Marcus nor called into question the "fairness, integrity or public reputation of the judicial system," we will not set aside Marcus's forced labor conviction.  *See Marcus*, 130 S. Ct. at 2164.

By contrast, with regard to Marcus's sex trafficking conviction, the Government concedes that the erroneous jury instruction constituted plain error.[8]  The Government

---

[8] 18 U.S.C. § 1591(a)(1) provides, in relevant part: "Whoever knowingly . . . in or affecting interstate or

produced evidence that Marcus knowingly recruited and enticed Jodi in 1998; transported Jodi from Maryland to New York in early 2000; and harbored her from 1999 until 2001. Unlike with the forced labor charge, the conduct supporting the sex trafficking charge differed materially before and after October 2000, such that there is a reasonable probability that the erroneous jury charge affected the outcome of the trial and affected the fairness, integrity or public reputation of the proceedings. Consequently, we again vacate Marcus's sex trafficking conviction and remand the case for retrial on this charge.[9] What remains are

---

foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, or obtains by any means a person . . . knowing that force, fraud, or coercion . . . will be used to cause the person to engage in a commercial sex act . . . shall be punished . . . ." 18 U.S.C. § 1591(a)(1).

[9] In our prior opinion we held that "for substantially the same reasons set forth in the District Court's opinion, . . . the totality of the evidence presented at trial was sufficient to support the convictions." *Marcus*, 538 F.3d at 102 n.6. With respect to Marcus's sex trafficking conviction, we reaffirm that holding today. We need not decide whether only the post-enactment evidence was sufficient to sustain the sex trafficking conviction because, even assuming it was not, double jeopardy would not bar retrial. *Id.* (citing *United States v. Mandel*, 591 F.2d 1347, 1371–74, *rev'd en banc on other grounds*, 602 F.2d 653 (4th Cir. 1979); *United States v. Harmon*, 632 F.2d 812, 814

Marcus's other challenges to his forced labor conviction.

Marcus argues that 18 U.S.C. § 1589 does not apply to his conduct.  He contends that Jodi and he engaged in an "intimate domestic relationship" based upon a shared BDSM lifestyle.  Further, he contends that the forced labor statute's phrase "labor and services" is ambiguous as applied to his conduct, and that the district court erred in refusing to apply the rule of lenity to narrowly construe the statute in his favor.  We agree with the district court's well-reasoned opinion that these arguments are without merit.

In relevant part, the forced labor statute punishes anyone who "knowingly provides or obtains the labor or services of a person . . . by threats of serious harm to, or physical restraint against, that person or another person." 18 U.S.C. § 1589 (2000).  The term "labor or services," which is not defined by the statute, is viewed in accord with its ordinary meaning.  *See Smith v. United States*, 508 U.S. 223, 228 (1993); *Harris v. Sullivan*, 968 F.2d 263, 265 (2d Cir. 1992).  Absent ambiguity in the statutory text,

---

(9th Cir. 1980) (per curiam)).

"[o]nly the most extraordinary showing of contrary intentions in the legislative history will justify a departure from [the statutory] language."  *United States v. Albertini*, 472 U.S. 675, 680 (1985) (internal quotation marks omitted).  We will only look to legislative history to interpret unambiguous statutes in "rare and exceptional circumstances."  *Garcia v. United States*, 469 U.S. 70, 75 (1984).  Moreover, we will not apply the rule of lenity to narrowly construe a statute where the applicable text is unambiguous.  *See United States v. Giordano*, 442 F.3d 30, 40 (2d Cir. 2006) (citing *Salina v. United States*, 522 U.S. 52, 66 (1997)).

The parties do not dispute that the ordinary meaning of the phrase "labor or services"[10] encompasses Jodi's various contributions to the Slavespace website from which only Marcus derived pecuniary gain.  Marcus, however, contends that Jodi's work on the Slavespace website was volunteered

---

[10] Webster's Dictionary defines "labor" as the "expenditure of physical or mental effort especially when fatiguing, difficult, or compulsory."  *Merriam-Webster's Third New International Dictionary Unabridged* (2002) *available at* http://www.mwu.eb.com/mwu. "Service" is defined as "the performance of work commanded or paid for by another."  *Id.*

to Marcus in a manner similar to unpaid domestic chores performed by any co-habitating couple, and the "punishments" Marcus inflicted upon Jodi are inseparable from the BDSM activities that were a long standing part of their intimate relationship. Marcus argues that by applying the statute's plain meaning to this relationship, the forced labor statute is susceptible to application in the context of "purely domestic chores" performed, for example, at the behest of an abusive spouse. Marcus presses that this is an incorrect application of a statute that was intended to proscribe international trafficking in slave labor and prostitution.

Marcus's argument is unpersuasive. The jury was properly instructed that consensual BDSM activities alone could not constitute the basis for a conviction under the sex trafficking charge,[11] and there is no reason to believe

---

[11] With respect to the sex trafficking charge, the court instructed:

> Throughout the trial, you have heard evidence about sexual practices called Bondage, Discipline/Domination, Submission/Sadism, Masochism, or "BDSM," that may involve actual physical restraint, such as being tied up or placed in a cage. The mere fact that a person was physically restrained during the course of such acts does not necessarily mean that the statute was

that the jury did not understand this instruction to be equally true with respect to the forced labor charge. The jury rejected Marcus's view of the affair, namely, that Jodi's work on the website and punishments relating thereto were all part of her long-time intimate relationship with Marcus and their broad participation in BDSM. Moreover, the evidence fully supports the Government's theory that, over time, the violence Marcus inflicted upon Jodi became nonconsensual, the punishments became more severe, and that Jodi would not have performed services for Marcus's website had she not feared that noncompliance would result in future physical and sexual abuse. The fact that Jodi's enslavement arose from her initial participation in consensual BDSM activities does not require a contrary conclusion.

Therefore, we conclude that the plain meaning of the forced labor statute unambiguously applies to Marcus's

violated. For example, if the physical restraint was consensual, then it would not constitute a violation of the statute.

It is for you to decide, based on a careful consideration of all the facts and surrounding circumstances, whether the acts of physical restraint violated the statute.

Trial Tr. 1261: 3–18.

conduct.  Thus, we do not address the statute's legislative history.  *See Giordano*, 442 F.3d at 40.[12]

For the reasons discussed above, we affirm Marcus's conviction with respect to 18 U.S.C. § 1589, vacate his conviction with respect to 18 U.S.C. § 1591, and remand the case to the district court for further proceedings consistent with this opinion.  Should the Government determine that it will not retry Marcus on the sex trafficking charge, we direct the district court to reconsider Marcus's sentence.  At this time, review of the reasonableness of his sentence is premature.

---

[12]  Because we conclude that the forced labor statute unambiguously applies to Marcus's conduct, we reject his as-applied vagueness argument.  "[O]ne whose conduct is clearly proscribed by the statute cannot successfully challenge it for vagueness."  *United States v. Nadi*, 996 F.2d 548, 550 (2d Cir. 1993).  In any event, this argument was raised for the first time on appeal, and Marcus does not contend that the district court committed plain error by not addressing it.  Consequently it is deemed waived.  *See United States v. Feliciano*, 223 F.3d 102, 125 (2d Cir. 2000).

Marcus also argues (1) that the district court's decision permitting two of the Government's witnesses to testify using only their first names and not to disclose their addresses or employment violated his due process rights; and (2) that the district court improperly denied Marcus's motion to suppress certain evidence.  We have considered both arguments and find them to be without merit.

## III. CONCLUSION

The district court's September 18, 2007 judgment of conviction is hereby AFFIRMED in part and VACATED in part. The case is REMANDED to the district court for proceedings consistent with this opinion.