06-5466-cr
United States v. Gabayzadeh

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 27th day of June, two thousand eleven.

PRESENT: CHESTER J. STRAUB,
REENA RAGGI,
RICHARD C. WESLEY,
*Circuit Judges.*

-----------------------------------------------------------------
UNITED STATES OF AMERICA,
*Appellee*,

v.                                                No. 06-5466-cr

MEHDI GABAYZADEH,
*Defendant-Appellant.*
-----------------------------------------------------------------

APPEARING FOR APPELLANT: ROBERT Y. LEWIS (Jennifer Freeman, Alexander T. Linzer, *on the brief*), Freeman Lewis LLP, New York, New York.

APPEARING FOR APPELLEE: JAMES M. MISKIEWICZ (Peter A. Norling, *on the brief*), Assistant United States Attorneys, *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, New York.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Joanna Seybert, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of conviction entered on November 29, 2006, is AFFIRMED.

Mehdi Gabayzadeh appeals his conviction for securities fraud conspiracy, see 18 U.S.C. § 371; conspiratorial and substantive bank fraud, see id. §§ 371, 1344; wire fraud, see id. § 1343; interstate transportation of stolen property, see id. § 2314; bankruptcy fraud, see id. § 152; conspiracy to commit perjury, see id. § 371; and obstruction of justice, see id. § 1512(b)(1). He contends that (1) evidentiary rulings denied him a fair trial; (2) trial counsel was ineffective; (3) "conscious avoidance" was erroneously charged; (4) the evidence was insufficient to support the § 2314 conviction; and (5) his sentence was unreasonable because (a) the loss amount was incorrectly calculated, (b) a multiple-victim enhancement did not apply, and (c) application of the Guidelines one-book rule violates the Ex Post Facto Clause. We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.  Evidentiary Rulings

    a.  Limitation on Cross-Examination

Gabayzadeh submits that limits on his cross-examination of John Lorenz and Jacob Lavi violated the Sixth Amendment right of confrontation. We are not persuaded.

    i.  Lorenz

The district court acted within its discretion in precluding questioning of Lorenz about the date of a meeting at which he discussed aspects of the charged bank fraud with Gabayzadeh because Lorenz had already testified extensively about prior occasions when the

2

two men discussed different aspects of the fraud.  See Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986); accord Watson v. Green, 640 F.3d 501, 2011 WL 1843513, at *7 (2d Cir. May 17, 2011).  The district court similarly acted within its discretion in limiting cross-examination of Lorenz about non-account-receivable transfers into the lockbox on the ground that the minimal probative value of such testimony was grossly outweighed by the potential for confusion and delay.  See, e.g., United States v. Stewart, 433 F.3d 273, 313 (2d Cir. 2006) (upholding preclusion of cross-examination necessitating "mini-trial" in an already lengthy and complex trial).  Even if Gabayzadeh had established that the transferred funds belonged to him, which the district court determined his proffer failed to do, his use of money from non-fraudulent sources to prop-up corporate finances shed little light on whether he simultaneously orchestrated the charged bank fraud.

ii.    Lavi

Insofar as Gabayzadeh complains that he was not permitted to cross-examine Lavi about false or inconsistent statements on (a) an insurance claim; (b) a bankruptcy affidavit; and (c) a statement to federal agents regarding the means by which a request for a false purchase order was communicated, the district court did not exceed its discretion in concluding that such matters were collateral and more likely to be confusing than probative. To the extent these matters cast doubt on Lavi's credibility, they were in any event cumulative in light of Lavi's testimony that he had knowingly participated in the bank fraud scheme, lied to federal agents, and only began cooperating with the government after his arrest.  See United States v. Stewart, 433 F.3d at 313 ("[T]he test is whether the jury was

3

already in possession of sufficient information to make a discriminating appraisal of the particular witness's possible motives for testifying falsely in favor of the government." (internal quotation marks omitted)); see also United States v. Concepcion, 983 F.2d 369, 391 (2d Cir. 1992).

b.     Exclusion of Evidence

i.     The E-mails

Gabayzadeh submits that his right to present a defense was impaired by the district court's exclusion of two e-mails between non-witness corporate employees that supported the defense that the chief financial officer, rather than Gabayzadeh, orchestrated the fraud. This claim fails. The district court reasonably concluded that the e-mails were not admissible because Lorenz, through whom Gabayzadeh sought to authenticate them, had no personal connection to the communications. See Fed. R. Evid. 803(6) (business record exception); see generally Jimenez v. Walker, 458 F.3d 130, 147 (2d Cir. 2006) (observing that defendant does not have "unfettered right" to offer testimony "otherwise inadmissible under standard rules of evidence" (internal quotation marks omitted)); cf. United States v. Kaiser, 609 F.3d 556, 574-75 (2d Cir. 2010) (upholding admission as business records witness's personal notes in business planner relating to fraud). In any event, the e-mails' inculpation of a third party was of marginal probative value in exculpating Gabayzadeh.

ii.     Other Evidence

The district court equally acted within its discretion in excluding two letters from Gabayzadeh's paralegal to his bankruptcy counsel. Although Gabayzadeh submits that the

4

letters demonstrate a good-faith belief that he owned the Neenah, Wisconsin assets, thereby supporting his defense to wire fraud, because the letters were sent only to counsel and not to the stalking-horse bidder, they did not undermine Gabayzadeh's earlier unqualified representation to the noteholders' representative that "all of the equipment at Neenah [was] owned" by him. Trial Tr. at 4679; Gov't Ex. 157.

Insofar as Gabayzadeh contends that a bankruptcy settlement order should have been admitted to rebut testimony that he abandoned his claims to the Neenah equipment, he forfeited this argument by failing to raise it in the district court. See United States v. Fell, 531 F.3d 197, 228-29 & n.22 (2d Cir. 2008). There, he cited the order only in support of an objection to a government exhibit showing that full payment was not made for the relevant equipment. Further, because the settlement order established only that Gabayzadeh was paid to settle a claim, not that he owned the equipment, it was not probative as to whether he knowingly lied when he claimed ownership two years earlier.

### iii. Harmlessness

We further conclude that the challenged limits on cross-examination and rejection of defense evidence were in any event harmless in light of the overwhelming evidence of Gabayzadeh's guilt, which in addition to the direct evidence provided by Lorenz, Stein, and Lavi, included extensive incriminating documentary evidence recovered from Gabayzadeh's office and Gabayzadeh's own admission to the banks that he diverted funds from the lockbox. See Fed. R. Crim. P. 52(a); United States v. Mercado, 573 F.3d 138, 142 (2d Cir. 2009); United States v. Paulino, 445 F.3d 211, 219 (2d Cir. 2006).

5

2.    Ineffective Assistance

Gabayzadeh faults trial counsel for failing to elicit testimony from Lorenz to support the theory that Gabayzadeh first learned of the fraudulent scheme over the 2001 Labor Day weekend. When an ineffective assistance claim is raised on direct appeal we may: (1) decline to hear the claim, permitting it to be raised in a subsequent 28 U.S.C. § 2255 petition; (2) remand the claim to the district court for necessary fact-finding; or (3) decide the claim on the record before us. See United States v. Brown, 623 F.3d 104, 112-13 (2d Cir. 2010). Although "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance," Massaro v. United States, 538 U.S. 500, 504 (2003), we may address the merits where "the factual record is fully developed" and resolution of the claim is "beyond any doubt or in the interest of justice," United States v. Gaskin, 364 F.3d 438, 468 (2d Cir. 2004) (internal quotation marks omitted). This is such a case.[1] Even if trial counsel was negligent in failing to elicit the Labor Day meeting evidence, that error would not have affected the outcome of the trial because evidence of Gabayzadeh's prior knowledge and direction of the bank fraud was overwhelming. See Strickland v. Washington, 466 U.S. 668, 694 (1984) (requiring "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"); accord United States v. Caracappa, 614 F.3d 30, 49-50 (2d Cir. 2010).

---

[1] In reaching this issue, we express no view as to whether Gabayzadeh may pursue other challenges in a future § 2255 proceeding.

6

3.       Conscious Avoidance Instruction

Gabayzadeh submits that error infecting the district court's conscious avoidance instruction requires us to vacate his wire fraud conviction. See United States v. Kaiser, 609 F.3d at 565-66 (observing that conscious avoidance charge must instruct "(1) that a jury may infer knowledge of the existence of a particular fact if the defendant is aware of a high probability of its existence, (2) unless the defendant actually believes that it does not exist" (internal quotation marks omitted)). Because Gabayzadeh did not object to the charge at trial, we review this challenge for plain error, see Fed. R. Crim. P. 30(d); United States v. Marcus, 130 S. Ct. 2159, 2164 (2010), and identify none.

Although the district court failed strictly to follow our instruction to use "high probability" language in charging conscious avoidance, we "do not review a jury instruction to determine whether it precisely quotes language suggested by Supreme or Appellate Court precedent." United States v. Schultz, 333 F.3d 393, 413 (2d Cir. 2003). Instead, we must determine "whether considered as a whole, the instructions adequately communicated the essential ideas to the jury." United States v. Sabhnani, 599 F.3d 215, 237 (2d Cir. 2010) (internal quotation marks omitted).

Here, the district court instructed that the knowledge element of the charged crime could be satisfied if the jury found that Gabayzadeh "acted with deliberate disregard of whether the statements were true or false, or with a conscious purpose to avoid learning the truth . . . unless the defendant actually believed the statements to be true." Trial Tr. at 6287. Unlike in United States v. Kaiser, 609 F.3d at 566, the charge in this case also instructed that

7

guilty knowledge could <u>not</u> be established if Gabayzadeh "was merely negligent or foolish." <u>Id.</u> Further, the court charged that the jury must acquit if it found that Gabayzadeh "was not a knowing participant in the scheme or that he lacked the specific intent to defraud." <u>Id.</u> Read as a whole, these instructions sufficiently informed the jury of the law of conscious avoidance and did not constitute error that was plain. <u>See, e.g.</u>, <u>United States v. Svoboda</u>, 347 F.3d 471, 481-82 (2d Cir. 2003); <u>United States v. Schultz</u>, 333 F.3d at 414.

Even if Gabayzadeh had carried this part of his burden, he cannot show that error affected the outcome of the trial because the evidence was sufficient to permit a rational jury to infer <u>actual</u> knowledge that he did not own the Neenah assets. <u>See, e.g.</u>, <u>United States v. Schultz</u>, 333 F.3d at 414 n.13 (holding that defendant who showed plain error in conscious avoidance charge still had to meet "weighty burden of establishing that the error affected the outcome of the trial," which was doubtful "in light of the sufficient evidence introduced to permit a rational jury to infer" requisite <u>mens rea</u>); <u>cf.</u> <u>United States v. Kaiser</u>, 609 F.3d at 567 (identifying plain error where there was "reasonable probability that the jury convicted [defendant] on a conscious avoidance theory and that the jury would not have done so but for the instructional error"). For that reason, permitting Gabayzadeh's conviction to stand would not "seriously affect the fairness, integrity or public reputation of judicial proceedings." <u>United States v. Marcus</u>, 130 S. Ct. at 2164 (internal quotation marks and alteration omitted).

4.      Sufficiency of the Evidence

Gabayzadeh submits that the evidence was insufficient to support his conviction for transportation of stolen property because it showed that Wells Fargo Equipment Finance, Inc. ("Wells Fargo") "had only creditor's rights, and not an ownership interest" in the three Perini rewinder machines at issue. Appellant's Br. at 63. Because Gabayzadeh did not raise this claim below, we review it only for plain error.

This court has recognized that the word "stolen" in 18 U.S.C. § 2314 "has been interpreted broadly to encompass any interference with or deprivation of another person's property rights." United States v. Bennett, 665 F.2d 16, 21 (2d Cir. 1981) (citing United States v. Turley, 352 U.S. 407, 417 (1957)); see also United States v. Schultz, 333 F.3d at 402. We have not, however, had occasion to decide at what point a creditor's property interest in collateral securing a debt is sufficient to be "tantamount to ownership," United States v. Bennett, 665 F.2d at 22 (internal quotation marks omitted), such that concealment and transfer of the collateral would give rise to criminal liability under § 2314, cf. United States v. Bunch, 542 F.2d 629, 630 (4th Cir. 1976) (holding that automobile taken with intent to deprive creditor of security interest was "stolen" within meaning of Dyer Act); but see United States v. Carman, 577 F.2d 556 (9th Cir. 1978) (holding that creditor's unsecured interest in debtor's cash was not sufficient to render the concealment of cash a "stealing"). We need not decide if these circumstances suffice to demonstrate that Wells Fargo had a property interest in the machines tantamount to ownership because even if we were to determine that it did not, we could not conclude that such an error in failing to prove the

9

"stolen" element of § 2314 was plain. See United States v. Marcus, 628 F.3d 36, 42 (2d Cir. 2010) (observing that error is "plain" where it is "clear or obvious, rather than subject to reasonable dispute" (internal quotation marks omitted)).

5.      Sentence

    a.      Loss Amount

Gabayzadeh, who is serving a 180-month term of incarceration, contends that his Guidelines range providing for lifetime incarceration was based on an erroneous loss amount of $193,461,068.10. He submits that because the government conceded difficulty in ascertaining with certainty the actual loss sustained by victims defrauded under the $165 million completed bond offering, determining the loss for the failed $400 million bond offering is, a fortiori, too speculative. We disagree.

We review a district court's factual findings on loss for clear error and its conclusions of law de novo. See United States v. Uddin, 551 F.3d 176, 180 (2d Cir. 2009). Although loss must be established by a preponderance of the evidence, the court need not make its finding of loss with precision, but need only make "a reasonable estimate of the loss, given the available information." Id. (internal quotation marks omitted); see also U.S.S.G. § 2B1.1 cmt. n.2(C) (2001) (recognizing sentencing judge's "unique position" to estimate loss based on evidence); United States v. Rigas, 583 F.3d 108, 120 (2d Cir. 2009).

Here, the district court's loss calculation for securities fraud was based upon the capital that Gabayzadeh intended to attract from investors through the $400 million bond offering. See U.S.S.G. § 2B1.1 cmt. n.2(A) (2001) ("[L]oss is the greater of actual loss or

10

intended loss."); <u>United States v. Ravelo</u>, 370 F.3d 266, 271 (2d Cir. 2004) (observing that "a loss may be intended irrespective of whether it could actually occur"). Undisputed trial evidence showed that had this bond offering succeeded, a portion of the $400 million would have been used to pay down approximately $140 million in bank debt and $165 million in secured bonds, leaving approximately $100 million in net proceeds. Gabayzadeh did not claim any contrary intent at sentencing. <u>Cf.</u> <u>United States v. Confredo</u>, 528 F.3d 143, 152 (2d Cir. 2008) (remanding for consideration of whether defendant had "proven a subjective intent to cause a loss of less than the aggregate amount" of fraudulent loans). On this record, the district court's $100 million loss calculation, which represented the intended <u>net</u> gain from the securities fraud scheme, was not clear error.

Gabayzadeh nevertheless contends that the $165 million combined loss for the securities and bank fraud schemes should have been offset by $267 million in pledged collateral, thus reducing the loss amount to zero. <u>See</u> U.S.S.G. § 2B1.1 cmt. n.3(E)(ii) (2001) (mandating credit for "amount the victim has recovered at the time of sentencing from disposition of the collateral"); <u>see generally</u> <u>United States v. Turk</u>, 626 F.3d 743, 748 (2d Cir. 2010). This claim is without merit. Contrary to Gabayzadeh's contention, the $267 million in collateral had not been recovered by the bank or bondholders at the time of sentencing in September 2006. Rather, the $267 million figure represented the proceeds from the sale of corporate assets as of December 31, 2003, <u>i.e.</u>, prior to distribution in the bankruptcy proceedings. Indeed, LaSalle Bank, which funded the corporate revolver, filed an affidavit in connection with sentencing reporting its post-bankruptcy loss at $119 million, far

11

exceeding the $65 million loss attributed to the bank fraud scheme by the district court. Further, if the $267 million in collateral were properly credited in calculating loss from the securities fraud scheme, it would be deducted from the $400 million in <u>gross</u> proceeds that Gabayzadeh intended to obtain from investors for what he knew was an insolvent entity. In short, as the district court aptly observed, it "doesn't come to . . . less than a hundred million dollar loss, no matter how you add it up." Sentencing Tr. at 29.

We need not address other purported errors in the district court's loss calculation because, even if resolved in Gabayzadeh's favor, the loss amount for the securities and bank fraud schemes alone would still exceed $100 million and, thus, the 26-level enhancement was correct. <u>See</u> U.S.S.G. § 2B1.1(b)(1)(N) (2001); <u>United States v. Rigas</u>, 583 F.3d at 120 (upholding 26-level enhancement because "regardless of the precise amount of the loss attributable to the . . . fraud, that figure easily exceeds $100 million").

b. <u>Multiple-Victim Enhancement</u>

Notwithstanding the district court's finding that his crimes "created havoc in hundreds of lives," Sentencing Tr. at 85, Gabayzadeh challenges the application of a four-level multiple-victim enhancement, <u>see</u> U.S.S.G. § 2B1.1(b)(2)(B) (2001) (authorizing four-level enhancement for fifty or more victims). He submits that investors in the $165 million bond offering properly could not be considered victims of securities fraud within the meaning of § 2B1.1(b) because the loss for that scheme was based on the <u>intended loss</u> from the failed $400 million bond offering. <u>See id.</u> cmt. n.3(A)(ii) (defining "victim" as, <u>inter alia</u>, "any person who sustained any part of the <u>actual loss</u> determined under subsection (b)(1)"

12

(emphasis added)); United States v. Skys, 637 F.3d 146, 153 (2d Cir. 2011) (recognizing error of law to include as victims individuals whose losses were not included in actual loss calculation). Gabayzadeh contends that because the district court calculated actual losses solely for the bank fraud and transportation of stolen property schemes, only the seven financial institutions affected by those crimes should be counted as victims for purposes of § 2B1.1(b) and, thus, any victim enhancement was error.

Even if the four-level enhancement were error, the offense level would have been reduced from 48 to 44, resulting in the same Guidelines range of life imprisonment. Based on our review of the district court's detailed and thoughtful discussion of reasons for imposing a below-Guidelines sentence of 180 months' imprisonment, we discern no adverse effect on Gabayzadeh's substantial rights from the purported Guidelines error. See, e.g., United States v. Diaz, 176 F.3d 52, 118 (2d Cir. 1999); United States v. Keppler, 2 F.3d 21, 24 (2d Cir. 1993). Indeed, the district court indicated that it was "inclined to almost go with the recommendation of the probation department" of 240 months' imprisonment, but departed because of Gabayzadeh's age. Sentencing Tr. at 86. In these circumstances, even if we had identified error, there is no need to remand for re-sentencing.

     c.    One-Book Rule

Finally, Gabayzadeh's contention that application of the one-book rule, see U.S.S.G. § 1B1.11(b)(3) (2001), violates the Ex Post Facto Clause, see U.S. Const. art. I, § 9, cl. 3, is foreclosed by our recent decision in United States v. Kumar, 617 F.3d 612, 628 (2d Cir. 2010), cert. denied, --- S. Ct. ----, 2011 WL 247113 (May 31, 2011). We are not persuaded

13

by Gabayzadeh's argument that <u>Kumar</u> was wrongly decided.  In any event, we are "bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court."  <u>NML Capital v. Republic of Argentina</u>, 621 F.3d 230, 243 (2d Cir. 2010) (internal quotation marks omitted).

6.    <u>Conclusion</u>

We have considered Gabayzadeh's remaining arguments and conclude that they are without merit.  For the foregoing reasons, the judgment of conviction is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

14