14-1275-cr
*United States v. House*


UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of January, two thousand and sixteen.

Present:
        PETER W. HALL,
        SUSAN L. CARNEY,
            *Circuit Judges*,
        BRIAN M. COGAN,
            *District Judge.*[*]

_____

UNITED STATES OF AMERICA,

        *Appellee*,

    v.                                     No. 14-1275-cr

RONALD L. HOUSE,

        *Defendant-Appellant*.

_____

[*] Hon. Brian M. Cogan, United States District Court for the Eastern District of New York, sitting by designation.

1

For Defendant-Appellant:    CHARLES F. WILLSON, Federal Public Defender, Hartford, CT.

For Appellee:    RAJIT S. DOSANJH (Lisa M. Fletcher, *of counsel*), Assistant United States Attorneys, *for* Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (Skretny, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Following a jury trial, Defendant-Appellant House was convicted of three counts of obstruction of justice in violation of 18 U.S.C. § 1503(a) (Counts Three, Four, and Six of the Superseding Indictment), acquitted of three other counts of obstruction of justice (Counts One, Two, and Five), and convicted of one count of making materially false statements in violation of 18 U.S.C. § 1001(a)(2) (Count Seven).  On April 8, 2014, House was sentenced to a term of imprisonment of 48 months.  We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues presented on appeal.

First, House argues that the court erred in approving the Title III wiretap applications because there was an insufficient showing of necessity under 18 U.S.C. § 2518(1)(c), which requires "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  In reviewing a district court's ruling on a motion to suppress wiretap evidence, "we accord deference to the district court because 'the role of an appeals court in reviewing the issuance of a wiretap order . . . is not to make a *de novo* determination of sufficiency as if it were a district judge, but to decide if the facts set forth in the application were minimally adequate to

support the determination that was made.'" *United States v. Miller*, 116 F.3d 641, 663 (2d Cir. 1997) (internal alteration omitted) (quoting *United States v. Torres*, 901 F.2d 205, 231 (2d Cir. 1990), *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36, 41 (2d Cir. 2010)).

In requiring disclosure as to the use, attempted use, and difficulties of employing other investigative techniques, Congress "struck a balance between the needs of law enforcement officials and the privacy rights of the individual." *United States v. Concepcion*, 579 F.3d 214, 218 (2d Cir. 2009) (internal quotation and alteration omitted). Even where a wiretap would be the most efficient method, the statutory requirement "reflects a congressional judgment that the cost of such efficiency in terms of privacy interests is too high," absent a sufficient showing of necessity. *Id.* (quoting *United States v. Lilla*, 699 F.2d 99, 105 n.7 (2d Cir. 1983)). The question, therefore, "is not whether a wiretap provides the simplest, most efficient means of conducting an investigation; telephonic surveillance may only be used when it is necessary to assist in law enforcement." *Id.*

The statute does not require, however, "that any particular investigative procedures must be exhausted before a wiretap may be authorized." *Miller*, 116 F.3d at 663 (internal quotation and alteration omitted). Title III does not "preclude resort to electronic surveillance until after all other possible means of investigation have been exhausted by investigative agents; rather [it] only require[s] that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods." *United States v. Vazquez*, 605 F.2d 1269, 1282 (2d Cir. 1979) (internal quotation omitted).

In this case, House's assertion that the issuing court's approval of wiretaps rested upon a "largely conclusory affidavit," Appellant's Br. at 15, is belied by the record. The 75-page

3

supporting affidavit explained that the wiretap was necessary to determine, *inter alia*, "the nature, extent and methods of operation" of the scheme to obstruct justice and the identities and roles of accomplices and co-conspirators. (*See* Report and Recommendation 9–10, ECF No. 31, Case No. 1:12-cr-0074.) Further, the affidavit provided a detailed description of the investigative techniques that had been attempted or considered and stated the specific reasons why those means were either not feasible or inadequate.[1] (*Id.* at 10). These facts were, at the least, "minimally adequate to support the determination that was made." *Miller*, 116 F.3d at 663 (internal quotation omitted).

House contends that other investigative methods, such as identifying cases where cooperation with authorities was at issue, polling Assistant United States Attorneys and Probation Officers, checking court records, conducting physical and GPS surveillance, and using cooperating witnesses, would have been adequate. This argument fails to explain how any of these methods would have fulfilled the government's objective of ascertaining the identities and roles of *others* in the obstruction scheme. Further, House's suggested methods fail to address the obstacles identified by the government, including the difficulties with physical surveillance, the limited utility of pen registers and telephone records given that many of House's clients used prison phones, the limitations posed by a Grand Jury proceeding, and the unreliability of witness interviews.[2]

---

[1] House contends that the affidavit misrepresented that he may have been conspiring with law enforcement to avoid surveillance. The affidavit's allegation that House had been in regular contact with a certain Rochester police officer, however, was supported by the record. The purpose of the wiretap was, in part, to determine whether the officer was a knowing participant in the obstruction scheme or whether he was gathering information legitimately on behalf of the police department.

[2] House's reliance on *United States v. Lilla*, 699 F.2d 99 (2d Cir. 1983), is misplaced. The Court determined in that case that an officer's affidavit had been insufficient to support the wiretap warrant because it did "not reveal what, if any, investigative techniques were attempted prior to

4

House also challenges the court's jury instructions regarding the obstruction of justice counts. He first argues that the court's instruction regarding the jury's obligation to reach a unanimous decision with respect to proof of guilt wrongly implied that the jury could convict on one count if they agreed that *any* count was proven, and that the instruction did not require that the jurors be unanimous as to the same count. The court's instruction made clear, however, that because the government alleged multiple possible theories of guilt with respect to a count, the jurors need not agree on the factual specifications for each count so long as the jury was unanimous that House was guilty of the offense charged in the count. The court further instructed the jury to evaluate the counts "methodically," by moving "charge to charge to charge to charge, count to count to count," Tr. 1835–36. That the jury understood the court's instructions is suggested by its acquittal of House on three of the obstruction of justice counts.[3]

House next contends that the district court erred when it instructed the jury that it could find him guilty if it determined that he sought payment from federal defendants "by claiming that he could obtain sentencing leniency," Tr. 1844—conduct that, House claims, might involve "no more than a defendant hiring a non-lawyer sentencing advocate or researcher," Appellant's Br. at 26. We disagree. House's argument is belied by the court's instruction that "no matter the

___

the wiretap request," *id.* at 104, and merely asserted that no other techniques would be effective. *Id.* Further, the record revealed that other investigative techniques had, in fact, been successful. *Id.*

[3] Any suggestion that the jury was required to agree on a factual theory of guilt for each count is not supported by Second Circuit jurisprudence. In *United States v. Natelli*, 527 F.2d 311 (2d Cir. 1975), the Court advised that "it would be sound practice" for courts to require such an instruction, *id.* at 325, but recognized that a general unanimity instruction was also proper. *Id.* Neither the Supreme Court nor this Circuit requires a unanimity instruction as to the factual theories of guilt underlying each count. *See United States v. Stewart*, 433 F.3d 273, 319 (2d Cir. 2006) (holding that the district court "did not err by failing to instruct the jurors that they must agree unanimously as to which theory of the offense . . . supported the verdict") (citing *Schad v. Arizona*, 501 U.S. 624, 631 (1991)).

means or way by which the crime is alleged to have been committed . . . the act must have been committed corruptly" with "the improper motive or purpose of obstructing justice." Tr. 1846. In fact, House requested this very instruction in order to "reinforc[e]" to the jury the need for the Government to prove he acted with "corrupt" intent, Tr. 1746, and he indicated to the court during the charge conference that no "further discussion" with the jury was necessary on this point. Tr. 1846–47. House similarly appeals on the basis that counseling a criminal defendant "to change attorneys and plead guilty in order to be released from custody," Appellant's Br. at 8, does not rise to the level of criminal conduct; this argument fails for the same reason. To the extent that House contends that the factual theories relied on by the government were legally insufficient to prove obstruction of justice, he overlooks the allegations in the indictment that he committed these acts "corruptly," that is, with the intent wrongfully to "influence, obstruct, or impede the due administration of justice." 18 U.S.C. § 1503.

We have considered Appellant's remaining arguments and find them to be without merit. The judgment of the district court is AFFIRMED.

FOR THE COURT:

CATHERINE O'HAGAN WOLFE, CLERK